Craig NEWMARK, et al., Plaintiffs,

v.

**TURNER BROADCASTING NETWORK, et al., Defendants.**

**No. CV 02–04445FMC(EX).**

United States District Court, C.D. California.

Aug. 15, 2002.

Ira P. Rothken, Rothken Law Offices, San Rafael, CA, Cindy Ann Cohn, Fred Von Lohmann, Robin Gross, Electronic Frontier Fdn., San Francisco, CA, for plaintiffs.

Mark A. Snyder, O'Melveny & Myers, Los Angeles, CA, Thomas P. Olson, Peter B. Rutledge, Maren Lee Matal, Wilmer Cutler & Pickering, Washington, DC, Jonathan H. Anschell, White O'Connor Curry & Avanzado, Los Angeles, CA, Steven F. Cherry, Wilmer cutler & Pickering, Tysons Corner, VA, for Turner Broadcasting System, Inc., National Broadcasting Co., Inc., Showtime Networks, Inc., United Paramount Network, ABC, Inc., defendants.

Thomas P. Olson, Peter B. Rutledge, Maren Lee Matal, Wilmer Cutler & Pickering, Washington, DC, Andrew M. White, Jonathan H. Anschell, White O'Connor Curry & Avanzado, Los Angeles, CA, Steven F. Cherry, Wilmer cutler & Pickering, Tysons Corner, VA, for Disney Enterprises, Inc., Paramount Pictures Corp., NBC Studios, Inc., Viacom Intern., Inc.

Scott P. Cooper, Proskauer Rose, Los Angeles, CA, Robert H. Rotstein, McDermott Will & Emery, Los Angeles, CA, Robert M. Schwartz, O'Melveny & Myers,

Los Angeles, CA, Thomas P. Olson, Peter B. Rutledge, Maren Lee Matal, Wilmer Cutler & Pickering, Washington, DC, Jonathan H. Anschell, White O'Connor Curry & Avanzado, Los Angeles, CA, Steven F. Cherry, Wilmer cutler & Pickering, Tysons Corner, VA, for CBS Worldwide, Inc., CBS Broadcasting, Inc., Time Warner Entertainment Co., LP, Home Box Office, Warner Bros., Warner Bros. Television, Time Warner, Inc., New Line Cinema Corp., Castle Rock Entertainment, WB Television Network Partners, LP, Metro-Goldwyn-Mayer Studios, Inc., Orion Pictures Corp., Twentieth Century Fox Film Corp., Universal City Studios Productions, Inc., Fox Broadcasting Co., defendants.

Robert H. Rotstein, Lisa Stone, McDermott Will & Emery, Los Angeles, CA, Thomas P. Olson, Peter B. Rutledge, Maren Lee Matal, Wilmer Cutler & Pickering, Washington, DC, Jonathan H. Anschell, White O'Connor Curry & Avanzado, Los Angeles, CA, Steven F. Cherry, Wilmer cutler & Pickering, Tysons Corner, VA, for Columbia Pictures Industries, Inc., Columbia Pictures Television, Inc., Columbia Tristar Television, Inc., Tristar Television, Inc., defendants.

Mitchell Zimmerman, Emmett Charles Stanton, Fenwick & West, Palo Alto, CA, Thomas P. Olson, Peter B. Rutledge, Maren Lee Matal, Wilmer Cutler & Pickering, Washington, DC, Jonathan H. Anschell, White O'Connor Curry & Avanzado, Los

Angeles, CA, Laurence F. Pulgram, Michael Harrison Rubin, Fenwick & West, San Francisco, CA, for RePlay TV, Inc., SONICBlue, Inc., defendants.

## ORDER DENYING MOTION TO DISMISS; ORDER DENYING MOTION TO STAY; ORDER GRANTING MOTION TO CONSOLIDATE

COOPER, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss or, Alternatively, to Stay Proceedings, and Plaintiffs' Motion to Consolidate. These matters were heard on August 12, 2002, at which time the parties were in receipt of the Court's tentative order. For the reasons set forth below, the Court **hereby denies** the Motion to Dismiss (docket # 43–1), **hereby denies** the Motion to Stay (docket # 43–2), and **hereby grants** the Motion to Consolidate (docket # 45).

### I. Background

The parties are well-acquainted with the nature of the present action and *Paramount Pictures Corporation v. RePlayTV, Inc.*, No. 02–04445 FMC (Ex) ("the *RePlayTV* action"), which are only briefly described below.

### A. The *RePlayTV* Action

Plaintiffs in the *RePlayTV* action are a number of television and film companies in the entertainment industry.[1] Defendants

---

1. Specifically, the Plaintiffs in the *RePlayTV* action are Paramount Pictures Corp. ("Paramount"); Disney Enterprises, Inc. ("Disney"); National Broadcasting Company ("NBC"); NBC Studios, Inc. ("NBC Studios"); Showtime Networks, Inc. ("Showtime"); The United Paramount Network ("UPN"); ABC, Inc. ("ABC"); Viacom International, Inc. ("Viacom"); CBS Worldwide, Inc. ("CBS Worldwide"); CBS Broadcasting, Inc. ("CBS"); Time Warner Entertainment Company, L.P. ("TWE"); Home Box Office ("HBO"); Warner Brothers ("Warner Brothers"); Warner Brothers Television ("WBT"); Time Warner, Inc. ("TWI"); Turner Broadcasting System, Inc. ("Turner Broadcasting"); New Line Cinema Corp. ("New Line"); Castle Rock Entertainment ("Castle Rock"); The WB Television Network Partners, L.P. ("WBT Network"); Metro–Goldwyn–Mayer Studios, Inc. ("MGM"); Orion Pictures Corp. ("Orion"); Twentieth Century Fox Film Corp. ("Fox"); Universal City Studios Productions, Inc. ("Universal"); Fox Broadcasting Co. ("FBC"); Columbia Pictures Industries, Inc. ("Columbia Industries"); Columbia Pictures Television ("Columbia Television"); Colum-

in the *RePlayTV* action are SONICblue, Inc. ("SONICblue"), and its wholly owned subsidiary, RePlayTV, Inc ("RePlayTV").[2]

The factual allegations in the *RePlayTV* action center on the development and sale by RePlayTV of a digital video recorder: the RePlayTV 4000 series. The digital video recorder, or DVR, enables television viewers to make digital copies of copyrighted television programs. The DVRs are equipped with commercial-skipping features, and they may be used to send copies of televised programs (or "content") to other RePlayTV owners via high-speed internet connections.

The Plaintiffs in the *RePlayTV* action have asserted claims against SONICblue and RePlayTV based on, *inter alia*, contributory and vicarious copyright infringement. These claims are based on the alleged direct copyright infringement committed by the owners of the RePlayTV DVRs. (*See, e.g., Paramount Compl.*, No. 01–09358, ¶ 64 (regarding contributory infringement); ¶ 71 (regarding vicarious infringement)).

## B. The *Newmark* Action

Five owners of RePlayTV DVRs have filed the present declaratory relief action in this Court.

All the twenty-eight plaintiffs in the *RePlayTV* action are defendants in the present action, which the Court refers to as the *Newmark* action. Throughout this Order, the Court refers to these defendants as "the Entertainment Defendants." SONICblue and RePlayTV are defendants in the present action as well.

The factual allegations in the Complaint reveal that the *Newmark* Plaintiffs use the

units to record content for later viewing;[3] some of the Plaintiffs transfer content to laptop computers for viewing while traveling. Plaintiffs use the commercial-skipping features of the RePlayTV DVRs; at least one Plaintiff uses the commercial-skipping features to control the advertising to which his children are exposed.

The *Newmark* Plaintiffs seek a declaration as to whether their activities constitute copyright infringement.

## II. Motion to Dismiss

The Entertainment Defendants move to dismiss the *Newmark* Plaintiffs' claims, arguing that the claims do not present an actual "case or controversy" as required by the Declaratory Judgment Act, 28 U.S.C. § 2201, and Article III of the United States Constitution. If the *Newmark* Plaintiffs' claims do not present an actual "case or controversy", the Court lacks subject matter jurisdiction over the matter, and the claims must be dismissed. *See Mason v. Genisco Technology Corp.*, 960 F.2d 849, 853 (9th Cir.1992).

A motion to dismiss an action for lack of subject matter jurisdiction is properly brought under Fed.R.Civ.P. 12(b)(1). The objection presented by this motion is that the court has no authority to hear and decide the case. When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312,

---

bia Tristar Television ("CTTV"); and TriStar Television, Inc. ("TriStar Television").

**2.** Throughout this Order, the Court will refer to SONICblue, Inc., and RePlayTV, Inc., collectively as "RePlayTV."

**3.** This use is referred to as "time-shifting."

103 L.Ed.2d 581 (1989). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *See Sopcak v. Northern Mountain Helicopter Serv.,* 52 F.3d 817, 818 (9th Cir.1995).

■ The present motion presents a novel issue: Does a plaintiff present an actual "case or controversy" under the Declaratory Judgment Act and Article III where the plaintiff's conduct is alleged, in a separate action against a third party for contributory and/or vicarious copyright infringement, to be direct copyright infringement? The parties have cited no authority that discusses the actual "case or controversy" requirement in the context of this unique factual scenario, and the Court, in its own research, has found none.

Nevertheless, both the Entertainment Defendants and the *Newmark* Plaintiffs cite a number of cases that are instructive on this issue, from which the Court concludes that the *Newmark* Plaintiffs have presented an actual "case or controversy."

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. This "actual controversy" requirement is the same as the "case or controversy" requirement of Article III of the United States Constitution. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). Therefore, the question of justiciability, and therefore of subject matter jurisdiction, is the same under § 2201 as it is under Article III.

The United States Supreme Court has given guidance as to when "an abstract" question becomes a "controversy" under the Declaratory Judgment Act:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible,

to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

Applying this standard, the Ninth Circuit has held that something less than an "actual threat" of litigation is required to meet the "case or controversy" requirement; instead, courts must focus on whether a declaratory plaintiff has a "reasonable apprehension" that he or she will be subjected to liability. *Societe de Conditionnement En Aluminium v. Hunter Engineering Co., Inc.,* 655 F.2d 938, 944 (9th Cir.1981). In *Societe,* the court first noted that the parties' assumption that a declaratory plaintiff must be subject to an "actual threat" was incorrect:

> We infer from the arguments of the parties that they agree that an actual threat of litigation must be made by the [declaratory defendant] for a case or controversy to exist. We assume that the district court applied this standard in reaching its decision. We conclude that the Constitution has a much lower threshold than this standard would suggest.

*Id.* The Ninth Circuit then went on to hold that the determination of whether a case or controversy exists must focus on the reasonable apprehension of the declaratory plaintiff:

> A better way to conceptualize the case or controversy standard is to focus on the declaratory judgment plaintiff. An action for a declaratory judgment that a patent is invalid, or that the plaintiff is

not infringing, is a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product.

*Id.*

Other cases make it clear that no explicit threat of litigation is required to meet the "case or controversy" requirement. *See also K–Lath v. Davis Wire Corp.*, 15 F.Supp.2d 952 (C.D.Cal.1998) (noting that a plaintiff seeking declaratory judgment must show "an explicit threat or **other action**" that creates a reasonable apprehension that the plaintiff will face an infringement suit) (emphasis added); *Intellectual Property Development v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1340 (Fed.Cir.2001) ("other action" is sufficient), *cert. denied,* —— U.S. ——, 122 S.Ct. 216, 151 L.Ed.2d 154 (2001); *Guthy–Renker Fitness v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264 (C.D.Cal. 1998) (same).

The Entertainment Defendants argue that the *Newmark* Plaintiffs cannot have a reasonable apprehension that they will face liability based on their use of their RePlayTV DVRs. The Entertainment Defendants contend that did not even know about the *Newmark* Plaintiffs until they filed this action, and that they did not name any individual Doe defendants in the *RePlayTV* action and point out that they make these allegations only because these allegations are necessary to state a claim against RePlayTV for contributory and vicarious copyright infringement.

However, the *Newmark* Plaintiffs argue persuasively that a victory by the Entertainment Defendants in the *RePlayTV* action will necessarily require a determination that the activities of the owners constitute direct copyright infringement, thereby instilling in them a reasonable apprehension that they will be subject to liability.

When viewed from the perspective of the *Newmark* Plaintiffs, the Entertainment Defendants' allegations in the *RePlayTV* action are sufficient to raise a reasonable apprehension that they will be subject to liability. The Complaints in the *RePlayTV* action allege that the actions of the *Newmark* Plaintiffs (and other RePlayTV DVR owners) constitute direct copyright infringement. Of course, the Entertainment Defendants must allege these facts to support their claims of contributory and vicarious copyright infringement against RePlayTV. But the fact remains that the Entertainment Defendants have, with a great deal of specificity, accused the *Newmark* Plaintiffs (and other RePlayTV DVR owners) of infringing the Entertainment Defendants' copyrights, and have demonstrated the will to protect copyrights through litigation. These facts raise a reasonable apprehension on the part of the *Newmark* Plaintiffs. This is especially so because that it appears from the Complaint in the *Newmark* action that the *Newmark* Plaintiffs are continuing to use their RePlayTV DVRs in a manner that the Entertainment Defendants allege constitutes infringing activity.

The Entertainment Defendants also argue that Plaintiffs cannot demonstrate any direct communication with defendants. However, it is clear in the Ninth Circuit that such direct communication is not necessarily required. *See Societe de Conditionnement En Aluminium*, 655 F.2d at 944–45. (finding that communication to third party could reasonably be viewed as a threat of litigation).

For these reasons, the Court holds that the claims of the *Newmark* Plaintiffs present an actual case or controversy, and that therefore this Court has subject matter jurisdiction over this action. Accordingly, the Court **hereby denies** Defendants' Motion to Dismiss.

## III.  Motion to Stay Action

In the alternative, the Entertainment Defendants move the Court to exercise its discretionary authority under the Declaratory Judgment Act to dismiss or stay this action.

■  The Court's exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, is discretionary:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

*Id.* (emphasis added).  The United States Supreme Court has interpreted this language as conferring the discretion, but not the obligation, to render declaratory judgments:  "This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *See Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952).  "The Declaratory Judgment Act was an authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962).  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Id.*

The Supreme Court not surprisingly has noted, however, that the refusal to exercise its discretion must be principled and reasonable, and should be articulated:  "Of course a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Id.*

This Court considers a number of factors in determining whether a stay should be granted.  The factors enunciated in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), are meaningful when the underlying action is a state action, rather than where, as here, the underlying action is proceeding in the same forum.  *Brillhart* requires federal courts to 1) avoid needless determinations of state law issues, 2) discourage forum shopping, and 2) avoid duplicative litigation.  These factors are not particularly helpful to the Court's analysis in this case.  *Id.*

The Ninth Circuit has noted, however, that the *Brillhart* factors are not exhaustive.  *See Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220, 1225 n. 5 (9th Cir.1998).  Other factors to be considered by the Court are 1) whether the declaratory action will settle all aspects of the controversy; 2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage;  and 4) whether the use of a declaratory action will result in entanglements between the federal and state court systems.  *Id.*

The fourth factor, like the *Brillhart* factors, is inapplicable here.

■  The first and second factor appear to the Court to be interrelated, and to weigh in favor of denying a stay.  The argument in favor of a stay is that all the issues presented in the *Newmark* action will necessarily be resolved by the *RePlayTV* action.  However, the Court is persuaded that the *Newmark* Plaintiffs may be correct that the *RePlayTV* action will not necessarily resolve what specific uses, if any,[4] of the RePlayTV DVR consti-

---

4.  The *RePlayTV* action is in its early stages.    At this time, the Court expresses no opinion

tute fair use.[5] Denying the stay furthers the purpose of the first and second factors—to resolve the uncertainties in the relations between the parties. The rationale behind these factors are better served by permitting the *RePlayTV* action and the *Newmark* action to proceed simultaneously.

Despite the Entertainment Defendants' argument, the Court is unconvinced that the *Newmark* action constitutes "procedural fencing." The Entertainment Defendants contend that the *Newmark* Plaintiffs' true intent is to circumvent the intervention requirements of Fed.R.Civ.P. 24 and to, in effect, intervene in the *RePlayTV* action. The Court is persuaded, however, that the *Newmark* Plaintiffs could well meet the intervention requirements of Fed.R.Civ.P. 24(a).[6] The *Newmark* Plaintiffs claim an interest in the transaction at issue, and are so situated that the resolution of the *RePlayTV* action may as a practical matter impair or impede their ability to protect that interest.[7] The Court is persuaded that although RePlayTV's interests and the interests of the *Newmark* Plaintiffs overlap significantly, those interests are not perfectly aligned. The *Newmark* Plaintiffs' interests are focused on whether specific uses constitute "fair use" under copyright law; RePlayTV's interests (and legal defenses) are likely to venture beyond the fair use

doctrine. Therefore, the Court rejects the Entertainment Defendants' argument that the *Newmark* Plaintiffs' true intent is to circumvent the intervention requirements of Fed.R.Civ.P. 24, and that their actions constitute mere "procedural fencing".

The Court concludes that the factors set forth in *Dizol* favor a denial of a stay.

The Court has also considered whether a stay will serve the public interest. *See Rickover*, 369 U.S. at 112, 82 S.Ct. 580. The Court recognizes that any unnecessary delay in adjudicating the rights of the *Newmark* Plaintiffs may chill their use of their RePlayTV DVRs. Similarly, any unnecessary delay may also lead to increased liability for statutory damages under federal copyright law. *See* 17 U.S.C. § 504(c)(1) (authorizing statutory damages for each non-willful violation of no less than $750 and no more than $30,000). Additionally, the Court is persuaded that denying the stay may result in a more fully developed factual record regarding the consumers' uses of the RePlayTV DVR and, as a result, the Court may be better able to fashion an appropriate equitable relief. The Court agrees that the public interest would not be served by the granting of a stay.

Accordingly, the Court **hereby denies** the Motion to Stay.

---

as to the merits of the claims advanced in the *RePlayTV* action.

**5.** The Court recognizes that resolution of the *RePlayTV* action may significantly narrow the issues presented in the *Newmark* action.

**6.** Rule 24(a) of the Federal Rules of Civil Procedure provides:

Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the

applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
*Id.*

**7.** For instance, the *Newmark* Plaintiffs' ability to protect their interest in using their RePlayTV DVRs would be impaired if the Court were to order that RePlayTV disable the send-show and commercial skipping features of the DVRs.

## IV. Motion to Consolidate

■ The Federal Rules of Civil Procedure authorize consolidation of cases in appropriate circumstances:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a).

Under this standard, it is clear to the Court that the *Newmark* action should be consolidated with the *RePlayTV* action. The actions involve common questions of law and fact. Both actions involve a determination of whether the use of certain features of the RePlayTV DVR constitutes copyright infringement. Both cases are at the early stage of litigation, which facilitates consolidation, at least for discovery and pretrial purposes.[8]

The Entertainment Defendants argue that the actions should not be consolidated. They correctly contend that the issues presented in the *Newmark* action—whether the specific uses of the *Newmark* Plaintiffs constitute fair use—is narrower than the issues presented in the *RePlayTV* action. From this fact, the Entertainment Defen-

dants conclude that the *Newmark* action will be more quickly and efficiently resolved if it is not consolidated with the *RePlayTV* action. Nevertheless, there is no question that the issue of whether the *Newmark* Plaintiffs' use of the RePlayTV DVRs' send-show and commercial-skipping features constitutes fair use will most likely figure prominently in both the *RePlayTV* action and the *Newmark* action. The Court is unconvinced that the Entertainment Defendants' are correct in characterizing the *Newmark* action as a case that will require little discovery and that will be resolved quickly if not consolidated. The issue of fair use has yielded a great deal of discovery in the *RePlayTV* action, and promises to do the same in this action.[9]

The Entertainment Defendants also claim that the *Newmark* Plaintiffs, in seeking consolidation, are merely attempting to gain unfettered access to discovery documents, and to widen the scope of discovery in *RePlayTV* action. That a party may seek discovery of irrelevant documents is a danger in any litigation; this concern is not unique to consolidated cases. There are procedural protections in place that assist parties in guarding against a party obtaining that irrelevant discovery. The Entertainment Defendants are well versed in seeking such protection. The Court

---

8. The Court reserves for another day the issue of whether these actions should be consolidated for trial.

9. Part of the Entertainment Defendants' Opposition to the Motion for Consolidation addresses the scope of discovery to which the *Newmark* Plaintiffs would be entitled. They contend that consolidation will unnecessarily complicate the *RePlayTV* action because the *Newmark* Plaintiffs will not be entitled to as broad a range of discovery as RePlayTV was found to be entitled to. The Entertainment Defendants similarly argue that the depositions of the Entertainment Defendant representatives would be unnecessarily complicat-

ed as RePlayTV would attempt to question these representatives using documents obtained in discovery in the *RePlayTV* action. This would cause the Entertainment Defendants to halt the depositions every few moments to discuss whether the *Newmark* Plaintiffs should be entitled to access to discovery provided in the *RePlayTV* action.

The Court leaves the determination of the precise scope of discovery to the Magistrate Judge. At this stage of the proceeding, the Court is satisfied that the issue of fair use is present in both actions, and therefore finds the Entertainment Defendant's arguments unpersuasive.

does not at this time resolve issues regarding the scope of discovery; rather, the Court merely notes that the Entertainment Defendants' concerns regarding access to discovery do not persuade the Court that consolidation is inappropriate.

In reaching this conclusion, the Court is guided by the agreement of the *Newmark* Plaintiffs' counsel to abide by the terms of the multi-tiered protective order to which the parties stipulated in the *RePlayTV* action.

## V. Conclusion

For the reasons set forth above, the Court **hereby denies** the Motion to Dismiss (docket # 43–1), **hereby denies** the Motion to Stay (docket # 43–2), and **hereby grants** the Motion to Consolidate (docket # 45). For ease of recordkeeping, the Court orders that all further documents be filed under Case No. CV 01–09358, and that Case No. CV 02–04445 be closed.